IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIRBIE BECKER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 19-5700 |
| | : | |
| v. | : | |
| | : | |
| EARLY WARNING SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                          May 7, 2020

The plaintiff claims that the defendant violated the Fair Credit Reporting Act ("FCRA") and the Fair and Accurate Credit Transactions Act of 2003 ("FACTA") because it allegedly did not reasonably investigate and update her credit report to reflect that she had closed a certain bank account. The defendant has moved to dismiss the operative complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, requiring the court to determine whether the plaintiff has standing and has alleged sufficient facts to bring her claims.

After reviewing the parties' submissions and the operative complaint, the court dismisses the claims brought under sections 1681e, 1681i and 1681c(e) of the FCRA, because the plaintiff does not allege a statutory violation under these provisions and because she fails to present a concrete injury in fact under these provisions. The court also dismisses the FACTA claims because the plaintiff fails to allege any facts showing that she is entitled to relief under this Act and does not even contend as such in her response to the motion to dismiss. Therefore, the court grants the defendant's motion to dismiss.

# I.   ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, Kirbie Becker, filed her complaint against the defendant, Early Warning Services ("EWS"), on November 5, 2019, in the Court of Common Pleas of Montgomery County, Pennsylvania. Notice of Removal, Ex. A, Compl., Doc. No. 1. In the complaint, the plaintiff alleged that the defendant did not reasonably investigate and properly update her consumer file to reflect that she voluntarily closed a Wells Fargo checking account. Compl. at ¶¶ 13, 17, Doc. No. 1. Instead, her credit report showed that the account was "closed," which could make it appear that the bank had "unilaterally closed" the account. *Id.* at ¶ 17. Based on the defendant's failure to investigate and take corrective action as requested by the plaintiff, she claimed that the defendant violated the FCRA and the FACTA. *Id.* at ¶ 1.

The defendant removed the case to federal court on December 3, 2019, based on the court's federal question jurisdiction under 28 U.S.C. § 1331. Doc. No. 1. On January 14, 2020, the plaintiff filed an amended complaint. Doc. No. 17.

In the amended complaint, the plaintiff again claims that the defendant, a consumer reporting agency, mischaracterized the status of her Wells Fargo checking account. Am. Compl. at ¶¶ 10, 13, 25. The plaintiff asserts that this account was a "credit account," *id.* at ¶ 15, because it "allowed [her] to incur debt(s) for overdraft protection on the account, and then pay the amount of the overdraft back later as well as fees and charges for such overdraft." *Id.* at ¶ 18.  The plaintiff asserts that she voluntarily closed this account, but the defendant listed the account simply as "closed" in her "consumer file." *Id*. at ¶ 25.

The plaintiff wrote to the defendant, seeking an investigation into the account closure. *Id.* at ¶¶ 28, 30–31. The defendant investigated the matter and concluded that the information was accurate. *Id.*, Ex. 1, July 24, 2018 Letter. The defendant informed the plaintiff of the investigation

and its findings. *Id.* The defendant also informed the plaintiff that "[i]f the reinvestigation d[id] not resolve [her] dispute regarding the accuracy or completeness of the report, [she] may submit a brief written rebuttal statement setting forth the nature of [her] dispute." *Id.*

The plaintiff wrote to the defendant one year later to "request that [EWS] update the . . . account to show that it was closed by [the plaintiff]." Am. Compl. Ex. 1, Aug. 4, 2019 Letter. The plaintiff wrote to the defendant a third time on August 7, 2019, to request that the report show that she closed her account voluntarily and that the report list an address for Wells Fargo Northeast. *Id.* The plaintiff wrote to the defendant a fourth time on September 7, 2019, to request that the report define the term "closed." Am. Compl. Ex. 1, Sept. 7, 2019 Letter.

The defendant informed the plaintiff on September 19, 2019, that her "dispute does not offer any new or additional information from [her] previous[] dispute[s,]" and that she could submit "new/additional information" to the defendant if she had any such information. Am. Compl. Ex. 1, Sept. 19, 2019 Letter. Additionally, the defendant informed the plaintiff that she "may file a brief statement setting forth the nature of [her] dispute" if she believed that "the re-investigation d[id] not resolve" it, and the defendant would "supply notification of [the] statement to" qualified inquirers who had recently received the plaintiff's consumer report. *Id.*

Based on these allegations, the plaintiff claims that the defendant's actions constitute a violation of the FACTA and three provisions of the FCRA, namely 15 U.S.C. §§ 1681c(e), 1681e, and 1681i. Am. Compl. at ECF pp. 3, 7. With respect to these sections of the FCRA, the plaintiff alleges that the defendant violated section 1681c(e) of the FCRA when it reported that her account was closed, rather than reporting she voluntarily closed the account. Am. Compl. at ¶¶ 17, 35. As for section 1681e, the plaintiff claims that the defendant violated this section "by refusing to update Plaintiff's consumer report to show that the account was closed by Plaintiff and not closed by"

Wells Fargo. *Id.* at ¶ 36. Concerning section 1681i, the plaintiff claims that the defendant violated section 1681i of the FCRA "by refusing to investigate and update Plaintiff's consumer report to show that the account was closed by Plaintiff and not closed by" Wells Fargo. *Id.* at ¶ 37. The plaintiff claims she has the right to sue under Section 1681n because the defendant's conduct was willful.[1] *Id.* at ¶ 45.

The plaintiff alleges that as a result of the defendant's actions, she suffered both intangible and tangible injuries. She suffered intangible injuries in the form of "some emotional distress, anger, and frustration." Am. Compl. at ¶ 43. She suffered tangible injuries in the form of "actual damages including but not limited to phone, fax, stationary, ink, postage, etc." *Id.* at ¶ 46. The plaintiff incurred these damages when she "wrote to Defendant and asked that Defendant conduct a reasonable investigation of the Wells Fargo Northeast account" and subsequently told the defendant that she "believed that [she] had closed the Wells Fargo Northeast account and that the account had not been unilaterally closed by" Wells Fargo. *Id.* at ¶¶ 30–31.

In response to the amended complaint, the defendant filed the instant motion to dismiss on January 31, 2020. Doc. No. 22. The plaintiff filed a response in opposition to the motion to dismiss on February 14, 2020. Doc. No. 23. The court heard argument on the motion during a telephone conference with counsel for the parties on February 19, 2020. The motion to dismiss is now ripe for disposition.

## II.    DISCUSSION

The defendant moves to dismiss the amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for the plaintiff's failure to establish standing, and under Rule 12(b)(6) for the plaintiff's failure to allege sufficient facts to state a claim. Standing is jurisdictional. *See*

---

[1] Section 1681n imposes liability on "[a]ny person who willfully fails to comply with any requirement imposed under" the FCRA. 15 U.S.C. § 1681i.

*ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 261 (3d Cir. 2001) ("If plaintiffs do not possess Article III standing, both the District Court and [the Court of Appeals] lack subject matter jurisdiction to address the merits of [the] case." (citations omitted)). The court must address the jurisdictional issue of standing at the outset because "[o]n every writ of error or appeal, the first and fundamental question is that of jurisdiction[.]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998) (citation and internal quotation marks omitted). Therefore, the court will first address the defendant's motion under Rule 12(b)(1) and will then address its remaining claims under Rule 12(b)(6).

### A.    Motion to Dismiss Under Rule 12(b)(1)

#### 1.    Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In addressing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a district court must first determine whether the motion "presents a facial attack or a factual attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (internal quotation marks and citations omitted). "A facial attack . . . considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court[.]" *Id.* at 358. When reviewing a facial attack, the court considers only the allegations contained in the complaint. *Id.* The court reviews the complaint in the light most favorable to the plaintiff. *Id.* A factual attack "contests the truth of the jurisdictional allegations[.]" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). When reviewing a factual attack, "the court may weigh and consider evidence outside the pleadings." *Constitution*

*Party of Pa.*, 757 F.3d at 358. In this case, the defendant filed its motion before filing an answer to the complaint. Therefore, its motion is a facial attack. *Id.*

### 2.      Analysis

#### a.      Establishing a Concrete Injury in Fact

Under Article III of the Constitution, federal courts are "courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), that can only make decisions about actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 2. A plaintiff can only litigate in federal court if she has standing to sue, meaning that she presents an actual "Case" or "Controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). The plaintiff bears the burden of proving that she has standing to sue in federal court. *Id.* (internal citation omitted). At the pleading stage, the plaintiff "must clearly . . . allege facts demonstrating each element" of standing. *Id.* (internal quotation marks and citation omitted). The plaintiff must demonstrate that she has standing for each claim "[s]he seeks to press and for each form of relief that is sought" because standing is not "dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks and citations omitted).

The Supreme Court has enumerated three elements that comprise the "'irreducible constitutional minimum' of standing[.]" *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1991)). Those three elements are: (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (internal citations omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (internal citations omitted).

6

b.  Whether the Plaintiff Alleges a Concrete Injury in Fact

The defendant contends that the plaintiff does not present an injury in fact under the FCRA.[2] Def's Early Warning Services, LLC Br. Supporting Mot. to Dismiss Pl's Am. Compl. ("Def's Br.") at 17, Doc. No. 22-1. The court agrees because the plaintiff has not alleged that she suffered "an invasion of a legally protected interest" or any "concrete" harm. *Lujan*, 504 U.S. at 561.

In conducting this standing analysis, the court must evaluate whether the plaintiff has alleged "a statutory violation that caused [her] to suffer some harm that 'actually exist[s]' in the world . . . [and is] not 'abstract' or merely 'procedural." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) (quoting *Spokeo*, 136 S. Ct. at 1548–49). "[W]ith the FCRA and the facts in hand, [the court] . . . analyze[s] whether Plaintiff[] ha[s] standing." *Long*, 903 F.3d at 318 (3d Cir. 2018). In evaluating the plaintiff's alleged injuries, the court bears in mind that "[t]he contours of the injury-in-fact requirement . . . are very generous, requiring only that claimant allege[] some specific, identifiable trifle of injury." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (citation and internal quotation marks omitted) (alteration in original). At the motion to dismiss stage, "'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, [the court] presume[s] that general allegations embrace those facts that are necessary to support the claim.'" *Id.* at 633–34 (quoting *Lujan*, 504 U.S. at 561).

A harm is "'concrete'" if it "'actually exist[s]'" and is not merely "'abstract.'" *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1540). The requirement that the injury be concrete is not a requirement that the injury be

---

[2] The defendant does not contend that the plaintiff fails to establish standing under the FACTA and only challenges the unspecified FACTA claims under Rule 12(b)(6).

tangible. *Spokeo*, 136 S. Ct. at 1549. "In determining whether an intangible harm constitutes an injury in fact, both history and the judgment of Congress play important roles." *Id.* An intangible harm can constitute an injury in fact if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" or if Congress has "elevat[ed]" the intangible harm—which was "previously inadequate" to constitute an injury in fact—"to the status of legal cognizable injur[y]." *Id.* (citations and internal quotation marks omitted).

Congress's decision to elevate a previously inadequate intangible harm to an injury in fact through statute does not automatically confer standing upon a plaintiff who brings a claim under that statute—a point that the Supreme Court underscored in *Spokeo, Inc. v. Robins*. In *Spokeo*, the named plaintiff brought a claim on behalf of himself and the accompanying class alleging that Spokeo—a "people search engine" that provides users with consumer reports on those whom the users search—violated his statutory rights under the FCRA and caused him to suffer stress, anxiety, and a loss of employment opportunities. *Id.* at 1544; First Am. Compl. at ¶¶ 34–37, *Robins v. Spokeo, Inc.*, No. 2:10-cv-5306-ODW-AGR, 2011 WL 7782796 (C.D. Cal. Feb. 17, 2011). Although the district court dismissed the complaint for lack of standing, the Ninth Circuit Court of Appeals concluded that because "the violation of a statutory right is usually a sufficient injury in fact to confer standing" and the plaintiff alleged that "Spokeo violated *his* statutory rights," the plaintiff's alleged violations of his statutory rights were sufficient to satisfy the Article III injury in fact requirement. *Spokeo*, 136 S.Ct. at 1544–46.

The Supreme Court vacated the Ninth Circuit's judgment and remanded the case to the Ninth Circuit because the court failed to consider whether the plaintiff's intangible injury was concrete. *Id.* at 1550. The Court determined that a plaintiff "cannot satisfy the demands of Article

III by alleging a bare procedural violation" of the statute.[3] *Id.* Such a violation would not align with Congress's purpose and the protections it intended to grant in enacting the FCRA. The purpose of the FCRA is "to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* A plaintiff could allege a bare procedural harm in an instance where "information may be entirely accurate" or where an inaccuracy does not "present any material risk of harm." *Id.* Bestowing standing on such a "bare procedural harm" would constitute a violation of Article III. *Id.*

The Third Circuit interprets *Spokeo* as a reiteration of "traditional notions of standing, rather than [an erection] of new barriers that might prevent Congress from identifying new causes of action though they may be based on intangible harms." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d at 638 (footnote omitted). The Third Circuit recognizes that *Spokeo* shed light on "some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). The *Spokeo* Court provided two examples of such technical violations that would not amount to a concrete injury in fact. First, "if a consumer reporting agency fail[ed] to provide the required notice to a user of the agency's consumer information, [but] the information [was] entirely accurate," there would be no concrete injury. *Spokeo*, 136 S.Ct. at 1550. Second, if an agency reported an "incorrect zip code" for a consumer, the inaccuracy would be innocuous and would not manifest the "material risk of harm" requisite to establish a concrete injury in fact. *Id.*

In this case, the plaintiff claims that as a result of the defendant listing her account as "closed" rather than "voluntarily closed", she suffered from (1) a violation of her rights under the FCRA; (2) "some emotional distress, anger, and frustration"; and (3) "actual damages including

---

[3] The court notes that a plaintiff "need not allege any *additional* harm beyond the one Congress has identified" in every instance. *Spokeo*, 136 S. Ct. at 1549

but not limited to phone, fax, stationary, ink, postage, etc." Am. Compl. at ¶¶ 35–37, 43, 46–47. The court will address each harm in turn.

First, any violation of the plaintiff's rights under the FCRA amounts to nothing more than a bare procedural harm. *Spokeo*, 136 S. Ct. at 1546. Congress enacted the FCRA provisions at issue in this case to protect consumers' concrete interests in the publication of accurate information. *See id.* at 1550 (Congress enacted FCRA to "curb the dissemination of false information"); *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (explaining that S. Rep. No. 91–517, at 1 (1969) stated: "'The purpose of the fair credit reporting bill is to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.'"). The court does not recognize listing an account as closed (as opposed to voluntarily closed) as a violation of the plaintiff's legally protected interests. If the discrepancy could be deemed any violation at all, it is "a mere technical violation of a procedural requirement of a statute." *In re Horizon Healthcare Servs Inc. Data Breach Litig.*, 846 F.3d at 638 (citing *Spokeo*, 136 S. Ct. at 1549), that does not present a "material risk of harm" to the plaintiff. *Spokeo*, 136 S. Ct. at 1550.

The plaintiff's emotional harm and the actual damages she incurred by making phone calls and sending letters to address her concerns do not amount to concrete harms. Any purported harm stems "solely from the consumer's awareness that a consumer reporting agency possesses" imprecise information. *Harmon*, 2018 WL 6062355, at *5. It does not stem from the consumer reporting agency sharing that information with any other entity, which means that no harm can result from it. Moreover, even if the defendant shared the report in its current form with another entity, there would be no discernable harm to the plaintiff.

If the plaintiff's contention is that these harms resulted from her fear that this information *might* be shared with a third party (which is not a contention that she plainly lays out in her amended complaint), the court would still find that these harms do not manifest a concrete injury in fact. Such an argument would amount to the plaintiff "manufactur[ing]" standing "by inflicting harm on [herself] based on [her] fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (citations omitted).

Accordingly, the plaintiff lacks standing to bring these claims under the FCRA and the court must dismiss them without prejudice.

### B. Motion to Dismiss Under Rule 12(b)(6)

#### 1. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). As such, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### 2.     Analysis

####     a.     The Plaintiff's Claims Under Sections 1681e(b), 1681i, and 1681c(e)

The plaintiff brings her claims under sections 1681e(b), 1681i, and 1681c(e) of the FCRA as well as the FACTA.[4] The subsequent analysis examines whether the plaintiff's amended complaint contains sufficient allegations to mount a claim under each of these provisions. The court concludes the facts alleged in the amended complaint are insufficient to overcome the defendant's motion to dismiss.

####     i.     *Section 1681e(b)*

Section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A "consumer report" necessitates a "written, oral, or other communication of any information by a consumer reporting agency bearing" information pertaining to the consumer's credit information, "character, general reputation, personal characteristics, or mode of living." 15 U.S.C.

---

[4] As discussed in Part III B2(a)iv., it is unclear whether the plaintiff raises the FACTA as an independent ground for her claims, or if she references the FACTA only insofar as it amends the FCRA.

§ 1681a(d)(1). The consumer reporting agency supplies this information with the expectation that it will be used to evaluate "the consumer's eligibility for . . . credit or insurance"; "employment purposes; or" similar purposes. 15 U.S.C. § 1681a(d)(1)(A)–(C).

A plaintiff can allege either negligent or willful noncompliance by the consumer reporting agency. To establish negligent noncompliance with section 1681e(b), the plaintiff must establish four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citation and internal quotation marks). The plaintiff can demonstrate willful noncompliance with section 1681i by showing that the defendant "knowingly and intentionally committed an act in conscious disregard [of the FCRA], but need not show malice or evil motive." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997) (citation and internal quotation marks omitted).

The threshold inquiry under either standard is whether the plaintiff alleges that the defendant reported inaccurate information. *See Shaw v. Experian Info. Sols.*, 891 F.3d 749, 756 (9th Cir. 2018) ("Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting by the [credit reporting agency]." (citation and internal quotation marks omitted)). "If the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *O'Connor v. Trans Union Corp.*, No. CIV. A. 97-4633, 1999 WL 773504, at *3 (E.D. Pa. Sept. 29, 1999) (citation and internal quotation marks omitted); *see also* Elizabeth O'Connor Tomlinson, 153 AM. JUR. PROOF OF FACTS 3D, *Issues Regarding Proof of Violation of Fair Credit Reporting Act* § 14 (2020) ("The threshold question under the Fair Credit Reporting Act is whether the challenged credit

information is accurate. If the information is accurate, no further inquiry . . . is necessary."). Information is inaccurate when it is either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Schweitzer v. Equifax Info. Sols., LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (citations and internal quotation marks omitted).

As indicated above, the plaintiff summarily alleges that the defendant violated section 1681e(b) by failing to update her file to reflect that she voluntarily closed her Wells Fargo account. Am. Compl. at ¶ 36. This is insufficient to allege a harm under either the negligence or willful noncompliance standard[5] of Section 1681e(b) for two reasons. First, the plaintiff does not allege that the report contains any factual inaccuracy. Listing the account as closed, rather than voluntarily closed is not "patently incorrect" or "misleading" in a manner that "can be expected to adversely affect credit decisions." *Shaw*, 891 F.3d at 755. Listing the account as closed does not "convey a negative situation." Decl. of Scott Bernier ("Bernier Decl."), Ex. 1, Summary File Disclosure at 5.[6] When an account "is closed because the account was not handled in a manner consistent with bank policy," EWS lists the account as "closed for cause" or "closed for cause/purge." *Id.* There was no such notation in the plaintiff's report.

---

[5] The plaintiff claims that the defendant willfully violated the FCRA. Am. Compl. at ¶ 45. However, there are portions of the complaint where the plaintiff appears to invoke negligence. *Id.* at ¶¶ 41–42. The court evaluates the plaintiff's claim under both the negligence and willfulness standards.

[6] The defendant appended the file disclosure it sent to the plaintiff on July 29, 2019, in response to her July 8, 2019 letter in which she requested a copy of all information in her file. Bernier Decl. at ¶¶ 3, 4. The court can consider the disclosure in its entirety for the purpose of deciding on the motion to dismiss. *See In re Michaels Stores, Inc.*, Civ. No. 14-7563 (KM)(JBC), 2017 WL 354023, at *2 (D.N.J. Jan. 24, 2017) (explaining that "[t]he court may consider documents relied upon by the complaint" in considering motion to dismiss under Rule 12(b)(1) (citation omitted)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered[.] (citation and internal quotation marks omitted)); *Harmon v. RapidCourt, LLC*, Civ. A. No. 17-5688, 2018 WL 6062355, at *6 (E.D. Pa. Nov. 20, 2018) ("In its Motion to Dismiss, [the defendant] attached two exhibits, which the Court may consider because they are incorporated by reference into the Amended Complaint." (citation and internal quotation marks omitted)).

Second, the plaintiff has not alleged that the file at issue is a consumer report because she does not allege that the defendant communicated this information to a third party, nor that it communicated this information with the expectation that it would "be used or collected in whole or in part for the purpose of serving as a factor in establishing [her] eligibility for . . credit or insurance"; "employment purposes; or" a similar purpose. 15 U.S.C. § 1681a(d)(1)(A)-(C).[7] The failure to allege that the defendant communicated this information with the intent that this information be used to assess the plaintiff's credit worthiness renders her allegations outside of the reach of section 1681e(b). *See Angino v. Transunion, LLC*, No. 1:17-cv-954, 2018 WL 6042901, at *3 (M.D. Pa. Nov. 19, 2018) (dismissing claim brought under section 1681e because "FCRA's accuracy requirement pertains to the preparation of consumer reports," and "[n]one of the disclosures Plaintiffs obtained f[e]ll within the FCRA's definition of consumer reports" (internal quotation marks omitted)); *see also Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) ("In short, where there is no evidence of disclosure to a third party, the plaintiff cannot establish the existence of a consumer report."), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)).

For these reasons, the plaintiff does not sufficiently allege that she suffered a harm in the form of a statutory violation under section 1681e(b).

---

[7] Throughout the majority of the amended complaint, the plaintiff refers to the document in question as her "consumer file," not her "consumer report." Am. Compl. ¶¶ 12, 25, 34. Though on its face this may seem to be a trivial issue of lexicon, the distinction between a file and a consumer report is significant in the context of the FCRA. A "consumer report is a report generated by a credit reporting agency and delivered to a third party such as an employer, insurer, or lender, for use in deciding whether the consumer is eligible for credit or other purposes," while a "file" is "the credit reporting agency's file which it provides to the consumer, not third parties, and contains information solely as to transactions or experiences between the consumer and the person making the report." *Pettway v. Equifax Info. Servs., LLC*, Civ. A. No. 08-618-KD-M, 2010 WL 653708, at *7 (S.D. Ala. Feb. 17, 2010) (distinguishing between a "consumer report" and "credit file, credit report, or credit disclosure" (internal quotation marks and citations omitted)).

ii.     *Section 1681i*

Section 1681i mandates that

> if the completeness or accuracy of any item of information contained in a
> consumer's file at a consumer reporting agency is disputed by the consumer and
> the consumer notifies the agency directly . . . the agency shall, free of charge,
> conduct a reasonable reinvestigation to determine whether the disputed information
> is inaccurate and record the current status of the disputed information, or delete the
> item from the file[.]

15 U.S.C. § 1681i(a)(1)(A). The agency must conduct the reinvestigation and make any corrections

within 30 days of receiving notice of the dispute. *Id.*

In evaluating a claim under section 1681i, a court must answer the same threshold inquiry

as it does when evaluating a claim under Section 1681e(b): Does the plaintiff allege a factual

inaccuracy? *Schweitzer*, 441 F. App'x at 904 n.9 (dismissing section 1681i claims in which

plaintiffs failed to allege that their credit report contained inaccuracy because "without a showing

that the reported information was in fact inaccurate, a claim brought under § 1681i must fail"

(citation and internal quotation marks omitted)); *see also Shaw*, 891 F.3d at 756 (noting that

"[r]equiring an inaccuracy" for plaintiff to levy section 1681i claim "even absent an express

statutory mandate is consistent with the FCRA's purpose to protect consumers from the

transmission of inaccurate information about them" (citations and internal quotation marks

omitted)).

If the plaintiff alleges an inaccuracy, "[t]he question" before the court "is not simply

whether the credit reporting agency reinvestigated, but whether that reinvestigation was

'reasonable.'" *Schweitzer*, 441 F. App'x at 904. "[T]he parameters of a reasonable reinvestigation

will often depend on the circumstances of a particular dispute." *Cortez*, 617 F.3d at 713. In certain

circumstances, an agency may justifiably rely solely on the initial furnisher of the consumer's

information as the source of its information in the reinvestigation. *Cushman*, 115 F.3d at 225.

16

However, in other circumstances—such as an instance when the "consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable"—the agency may have "a duty to go beyond the original source" in conducting its reinvestigation. *Id.* (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)).

Here, the plaintiff's section 1681i claims fail for two reasons. First, as explained previously, the plaintiff fails to allege that the information contained in her file was inaccurate. Second, the documents appended to the amended complaint contradict her section 1681i claim.[8] The correspondence attached to the amended complaint demonstrates that the plaintiff wrote to the defendant on June 21, 2018, to request that it update her consumer report to show that she voluntarily closed her Wells Fargo account. Am. Compl. Ex. 1 at ECF p. 16. On July 24, 2018, the defendant responded and indicated it had conducted a reinvestigation that "confirm[ed] that the information contained in [the plaintiff's] file is accurate and complete as of the date it was furnished to [the defendant's] database[.]" *Id.* at ECF p. 17. This was not a circumstance in which the defendant had "a duty to go beyond the original source" in conducting its reinvestigation.[9] *Cushman.*, 115 F.3d at 226 (citation omitted). There was no reason for the defendant to suspect that Wells Fargo reported unreliable information, nor did the plaintiff claim that Wells Fargo was an unreliable source. For these reasons, the plaintiff does not sufficiently allege that she suffered a harm under section 1681i.

---

[8] The court may consider documents attached to the pleadings in rendering a decision on a motion to dismiss. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." (citation omitted)).

[9] The plaintiff does not claim that the reinvestigation was inadequate.

iii.    *Section 1681c(e)*

Section 1681c(e) is entitled "Indication of closure of account by consumer." 15 U.S.C. § 1681c(e). This section requires that "[i]f a consumer reporting agency is notified" by a person who regularly provides information to the consumer reporting agency "that a credit account of a consumer was voluntarily closed by the consumer, the agency shall indicate that fact in any consumer report that includes information related to the account." *Id.* If a defendant willfully violates section 1681c, the plaintiff is entitled to actual damages or statutory damages, punitive damages, and attorneys' fees and costs. 15 U.S.C. § 1681n.

The crux of the issue before the court is the definition of the term "credit account." The plaintiff contends that the term "credit account" encompasses deposit accounts with overdraft protection, such as the one the plaintiff maintained. Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Br.") at 1–2, Doc. No. 23-2; Am. Compl. at ¶¶ 19–21. The defendant argues that this interpretation of the term is incorrect, because overdraft protection cannot convert a deposit account into a credit account under the FCRA. Def.'s Br. at 3. To determine whether this provision applies to the plaintiff's deposit account, the court begins by examining the difference between a credit account and a deposit account, and then turns to the question of whether overdraft protection transforms a deposit account into a credit account.

The FCRA's definition of the term "account" includes deposit accounts. Section 1681a(r)(4) defines "account" for purposes of the FCRA as the same as the definition under the Electronic Funds Transfer Act ("EFTA"). The EFTA defines "account" as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1693a(2) (2011); *see also* 12 C.F.R. § 1005.2(b)(1) (2019) ("'Account' means a demand deposit (checking), savings, or other consumer asset account (other than an

occasional or incidental credit balance in a credit plan) held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.").

While the FCRA includes deposit accounts in its definition of "account," section 1681c(e) applies explicitly to "credit accounts," and not simply "accounts" as defined by section 1681a(r)(4). The FCRA defines the term "credit" as "the right granted by a creditor to a debtor to defer payment of a debt or to incur debts and defer its payment[.]" 15 U.S.C. § 1691a(d); *see* 15 U.S.C. § 1681a(r)(5) ("The terms 'credit' and 'creditor' have the same meanings as in section 1691a of this title."). In amending the FCRA, Congress recognized the distinction between a credit account and "a non-credit account, such as a deposit account." S. Rep. No. 104-185, at 35 (1995). Congress indicated that section 1681c(e) "applies only to credit accounts[.]" *Id.*

Like Congress, this court recognizes a distinction between a deposit account and a credit account. A deposit account does not fit into the definition of a credit account, because a deposit account holds existing funds that already belong to the account holder, rather than extending credit to the account holder such that she can defer payment of a debt. The court concludes that the term "credit account," as used in section 1681c(e) does not encompass deposit accounts.

The court now turns to the question of whether a deposit account with overdraft protection amounts to a credit account, such that section 1681c(e) applies to said account. The Office of the Comptroller of Currency ("OCC") is "charged with the enforcement of banking laws" and its interpretation of those laws is, therefore, entitled to "great weight." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 403–04 (1987). The OCC has determined that "[w]hen the [b]ank processes an overdraft item and recovers a fee for doing so," in the form of an overdraft fee "it is not exercising its right to collect a debt. Rather, the processing of an overdraft and recovery of an overdraft fee by balancing debits and credits on a deposit account are activities directly connected with the

maintenance of a deposit account." Office of the Comptroller of the Currency, Interpretive Letter No. 1082, 2007 WL 5393636, at *2 (May 17, 2007). In contexts outside of the FCRA, courts have similarly found that overdraft fees associated with deposit accounts do not amount to extensions of credit. *See, e.g.*, *Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133, 139 (1st Cir. 2019) (determining that defendant's "flat excess overdraft fees lack the hallmarks of an extension of credit" because, *inter alia*, "[o]verdraft transactions do not involve a customer reaching out to the bank to borrow money"); *Shaw v. BOKF, Nat'l Ass'n*, No. 15- 0173, 2015 WL 6142903, at *4 (N.D. Okla. Oct. 19, 2015) (finding that plaintiff did not "obtain a line of credit from" defendant bank, but rather, "maintained a checking account with [the bank] and overdrafted her account").

This court concludes that overdraft fees associated with a deposit account do not render a deposit account a credit account. Even though section 1681c(e) confers upon a consumer the right to a report that indicates she voluntarily closed a credit account, this right does not extend to deposit accounts. 15 U.S.C. § 1681c(e). Therefore, the plaintiff does not sufficiently allege that she suffered a statutory violation under section 1681c(e).

b.      The Plaintiff's FACTA Claim

The defendant also moves to have the court dismiss the plaintiff's FACTA claim because she fails to state any claim under the Act. Def.'s Br. at 14. "Congress enacted FACTA in 2003 as an amendment to the [FCRA]." *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 106 (3d Cir. 2019). Here, it is unclear whether the plaintiff mentions the FACTA simply because it amended the FCRA or because she has a particular claim under the FACTA. The plaintiff fails to identify any provision of the FACTA that the defendant violated, much less identify facts that support this claim. At bottom, the amended complaint only references the FACTA in paragraph 1 and the Count I heading, without any "short plain statement of the claim showing that the pleader is entitled to

20

relief." Fed. R. Civ. P. 8. Therefore, the court dismisses the unspecified FACTA claim in Count I.[10]

### C.    Leave to Amend

In the plaintiff's responsive brief, she requests that the court grant her leave to amend the amended complaint if the court grants the motion to dismiss. Pl.'s Br. at 2. A "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). Amending a complaint is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

With regard to the claims in this case, the court will not provide the plaintiff with leave to amend because doing so would be futile. As for the FACTA claim, the plaintiff makes no reference to this Act in her brief opposing the motion to dismiss. She has not even attempted to argue or justify that she has a claim under this Act and the court cannot discern how her current allegations or any possible additional allegations could state such a claim considering the foundation of her claims in this case, *i.e.* her contention that the defendant should have marked her Wells Fargo account as being voluntarily closed. Therefore, the court will not allow the plaintiff leave to amend her purported cause of action under the FACTA.

As for the plaintiff's FCRA claims, any amendment of her claims under sections 1681e and 1681i would also be futile because, *inter alia*, she has never argued that the report that the Wells Fargo account was closed is inaccurate (at least in a manner that could give rise to a claim). In addition, any amendment of her claim under section 1681c(e) would be futile because the

---

[10] The court notes that the Honorable Berle M. Schiller came to the same conclusion in another case brought by the plaintiff's counsel. *See Harmon*, 2018 WL 6062355, at *6 ("[The plaintiff] has failed to identify any provision of the FACTA that he brings a claim under or to allege any facts supporting claims under the FACTA. Instead, he simply references the FACTA in the heading of each count. This does not meet the pleading requirements of Rule 8.").

account at issue is not a "credit account" covered by this section. Finally, the plaintiff has not alleged in her brief or otherwise that she would have any additional facts that could take her alleged injury beyond a mere procedural harm for which she lacks standing to sue.

Accordingly, the court denies the plaintiff leave to file a second amended complaint in this case.

### III.    CONCLUSION

The court grants the motion to dismiss and dismisses the claims brought under sections 1681e, 1681i, and 1681c(e) of the FCRA because the plaintiff does not allege a statutory violation under these provisions and because the plaintiff fails to present a concrete injury in fact under these provisions. In addition, the court dismisses the FACTA claims under Rule 12(b)(6), because the plaintiff fails to provide any "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The court also denies the plaintiff's request to file a second amended complaint because doing so would be futile.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.